**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :
                                           :        17 Cr. 654 (RMB)
            - against -                    :
                                           :        **ORDER**
ALLANMON MAVUMKAL,                         :
                                           :
            Defendant.                     :
------------------------------------------------------------x

      The Court has reviewed the record herein, including without limitation: (1) Defendant Allanmon Mavumkal's motion, reply, and supplemental briefs dated May 21, 2020, June 4, 2020, July 15, 2020, and July 23, 2020, respectively, requesting that the Court grant him early release from prison. See Mot. at 1. "Mr. Mavumkal is at especially high risk for contracting and developing severe COVID-19 because he suffers from diabetes and severe obesity, Id. at 2; and (2) the Government's response, dated May 29, 2020, opposing Mavumkal's release and contending that: (i) Mavumkal is "an unequivocal danger to the community," See Opp. at 1; (ii) the "section 3553(a) factors do not support a sentence reduction." Id. The Government also provided Mavumkal's BOP medical records in unredacted form to the Court for its review. **The Court denies Mavumkal's motion for a compassionate release, as follows**:

**I.   Background**

      On March 8, 2018, Mavumkal pleaded guilty to four counts of Hobbs Act robberies, in violation of Title 18, United States Code, Section 1951. See Plea Hr'g Tr.  On November 26, 2018, the Court sentenced Mavumkal to 82 months imprisonment to be followed by 3 years of supervised release. See Nov. 26, 2018 Judgment. Mavumkal is incarcerated at D. Ray James

Correctional Institution, located in Folkston, Georgia.  See Opp. at 5.  His currently projected release date is August 24, 2023.  Id.; Mot. at 2.

## II. Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement." Application Note 1 states in part that extraordinary and compelling reasons may exist if: (1) "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

## III. Findings

The Court's findings are as follows:

1. Exhaustion of remedies is not an issue in this case. "Exhaustion is not an obstacle to the defendant's motion in this case." See Opp. at 6 fn 4.

2. The Defendant, who is 33 years old, suffers from diabetes, high cholesterol and obesity. The Government "acknowledges that the defendant has certain chronic medical conditions – diabetes and severe obesity – that the Centers for Disease Control and Prevention ("CDC") have identified as risk factors that place individuals at higher risk of severe outcomes from COVID-19." See Opp. at 7.

3. As of July 29, 2020, it appears that 72 of the nearly 1,495 inmates at D. Ray James Correctional Institution have tested positive for COVID-19. See https://www.bop.gov/coronavirus/ (last visited July 29, 2020). The institution has had an increase in the number of confirmed COVID-19 cases since the filing of the defense motion in this matter. "The number of reported confirmed COVID-19 cases among inmates at CI D. Ray James has more than quadrupled . . ." See Supp Br dated July 23, 2020 at 1.

4. BOP medical records appear to show that the BOP is managing Mavumkal's condition. "[T]he over-600 pages of medical records . . . also indicate that the defendant has been consistently provided extensive and appropriate medical care while in custody, including a host of prescription medications, mental health services, medical imaging scans, blood tests, and even a minor surgery to correct an in-grown toenail." See Opp. at 6. "Mr. Mavumkal is prescribed insulin twice per day; before each dose, his blood sugar is measured to determine the dosage. Mr. Mavumkal has been trying to control his blood sugar better through his diet, so in consultation with his doctor he attempted to cut his insulin treatment back to afternoons only. His prescription for morning insulin was left in place in case he needed it. Unfortunately, Mr. Mavumkal was unable to manage his

blood sugar with only one dose of insulin per day, so he is again taking insulin both in the morning and in the afternoon." See Reply at 4, fn 1.

5. The defense argues that "[t]here is no psychological counseling available for Mr. Mavumkal or anyone else" in U.S. federal prisons. See Reply at 3. Yet, the medical records reflect what appear to be progress notes of psychiatric counseling sessions with Mr. Mavumkal. See e.g., BOP Medical Records Progress Notes dated December 4, 2019, January 8, 2020, January 29, 2020 and March 18, 2020. The medical records also reflect that Mavumkal has failed to take advantage of the mental health services being offered to him by refusing to attend psychological appointments (either in person or via telehealth) on at least nine occasions from April 30, 2019 through April 15, 2020. See Opp. Exh. A. *See also U.S. v. Foozailov*, 2020 WL 3268688, at *2 (S.D.N.Y. June 17, 2020) ("The risk of complications should Defendant contract COVID-19 is concerning. However, Defendant's BOP medical records show that the BOP is managing his conditions, which weighs against a finding of extraordinary and compelling circumstances.").

6. Mavumkal poses a danger to the community. See U.S.S.G. § 1B1.13. Among other things, Defendant pled guilty to four Hobbs Act robberies and he was identified as the perpetrator of a least nine such robberies. The robberies were violent. The Court recalls in vivid detail watching the video of one such robbery in which the Defendant wielded a knife that the Court estimated to be at least six inches in length and extended that knife towards the cab driver of the cab he (the Defendant) was in. See Opp. at 3. The Defendant also has a history of using/abusing marijuana, cocaine, ecstasy, Xanax and Adderall. In his sentencing submission, dated August 22, 2018, Mavumkal's counsel stated: "Mr. Mavumkal was homeless, hopeless, separated from his son and girlfriend, unable to pay a gambling debt to a threatening individual, and severely abusing Adderall,

Xanax, and alcohol, which impaired his judgment and self-control." See Def Sent Submission dated August 22, 2018 at 7. During Mavumkal's sentencing, the Court stated, among other things "the nature and circumstances of the offense which are exceedingly problematic in the sense that they're both violent and dangerous and one can see that in the videos that exist in this case." See Sent Tr. at 29:12-15. *See United States v. Gil*, 2020 WL 2611872 (S.D.N.Y. May 22, 2020) (KMW) (compassionate release motion denied on danger grounds although defendant is 70, suffers from prediabetes, hypertension, hyperlipidemia and latent tuberculosis); *United States v. Montevecchi*, 2020 WL 3051335 (S.D.N.Y. June 8, 2020) (AKH) (compassionate release motion denied on danger grounds although defendant is 74, suffered a stroke, suffers from heart disease and kidney stones).

7. The compassionate release sentence reduction sought by Mavumkal would fail to satisfy the purposes of sentencing, including "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(a)-(c). The 82 months sentence the Court imposed was at the higher end of the stipulated guidelines range of 70-87 months. The 82 months sentence clearly reflects the Court's view that the offense was serious and punishment and deterrence were important sentencing factors. During sentencing the Court stated: "We also have to reflect the seriousness, we have to promote respect for the law. Providing a just punishment is something [we] always try to do and even though I'm inclined to agree with the government that the sentence toward the higher range is appropriate, I also recognize the need for mental health and drug treatment." See Sent Tr at 29:16-21.

8.  While the defense argues for home incarceration in Mavumkal's parents' home and strict supervision, these proposed conditions do not adequately protect the public. The Court is not convinced his parents' home is a secure and supportive environment for the Defendant. The Defendant's parents reside in a two bedroom two bathroom condominium in Plantation, Florida, where there is a surge in terms of the increasing number of coronavirus cases. There are a total of 432,747 Florida cases with 5,931 deaths related to COVID-19 as of July 28, 2020. And, in Broward County, there are a total of 51,169 residents who have tested positive and 607 deaths as of July 28, 2020. See https://www.floridahealth.gov (last visited July 28, 2020). In addition, in an evaluation dated June 21, 2018 by Barry Rosenfeld, PH.D., Clinical Psychologist, Dr. Rosenfeld stated: "Mr. Mavumkal's history, including an eating disorder that emerged in his teens and serious academic difficulties (despite above average intelligence) are indicative of a chronic psychological disorder. These problems emerged in the context of a family background characterized by strict, possibly abusive discipline inflicted by his father . . ." See Rosenfeld Evaluation at 5. Dr. Rosenfeld recommended "placement in a residential treatment program that integrates substance abuse and general mental health treatment . . . to address [Mavumkal's] comorbid substance abuse and psychiatric symptoms." Id. at 6.

## IV. Conclusion & Order

Defendant Mavumkal's motion for compassionate release is respectfully denied. The Government's request to file Exhibit A (excerpts of the Defendant's medical records) and its unredacted letter under seal is granted. The Court is also filing under seal the Defendant's complete medical records also submitted to the Court for its review. *See U.S. v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated: New York, New York
July 30, 2020

_____
**RICHARD M. BERMAN, U.S.D.J.**